UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANGEL RODRIGUEZ,

                    Plaintiff,

   v.                                                           9:16-CV-706
                                                                       (GTS/ATB)

HEIT, et. al,

                    Defendants.

ANGEL RODRIGUEZ, Plaintiff pro se
GREGG T. JOHNSON, ESQ., Attorney for Defendants
APRIL J. LAWS, ESQ., Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

**ORDER and REPORT and RECOMMENDATION**

**I.**    **Background and Procedural History**

In this civil rights complaint, plaintiff alleges that defendant Heit, a nurse at Clinton County Jail ("CCJ") violated plaintiff's right to privacy when she discussed his medical impairment in front of a corrections officer, while he was incarcerated at CCJ as a pre-trial detainee. (Complaint ("Compl.") ¶ 6 at p.1-3) (Dkt. No. 1).[1] Plaintiff also alleges that Clinton County has discriminated against him because of his "disability," in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (*Id.*)

Plaintiff's complaint contained three causes of action. (Compl. ¶ 7). Plaintiff's first cause of action alleged violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") against Nurse Heit. (First Cause of Action).

---

[1] Plaintiff has attached numbered pages to the factual statement of his form-complaint. The first page is the type-written form, numbered "1," and the next two inserted pages are numbered "2," and "3."

Plaintiff's second and third causes of action alleged ADA violations, including discrimination and retaliation. (*Id.*)

On July 20, 2016, Chief Judge Suddaby reviewed the complaint and found that "[c]onstruing the allegations in plaintiff's complaint with the utmost leniency," the complaint contained four claims (1) defendant Heit violated plaintiff's Fourteenth Amendment right to privacy and HIPAA when she revealed private and sensitive private personal information to non-medical staff members and openly discussed plaintiff's medical status with non-essential and non-authorized personnel; (2) First Amendment retaliation claims; (3) defendants violated Title II of the ADA when they excluded plaintiff from work programs due to his disability; and (4) defendants retaliated against plaintiff in violation of Title V of the ADA. (Dkt. No. 4 at 5).

In his analysis of plaintiff's claims, Chief Judge Suddaby found that plaintiff's Fourteenth Amendment privacy claim against defendant Heit survived initial review. (Dkt. No. 4 at 8). However, the court dismissed any claims based on HIPAA. (*Id.*) The court dismissed any First Amendment retaliation claims. (Dkt. No. 4 at 9-10). The court found that plaintiff's discrimination claim under Title II of the ADA against Clinton County survived initial review. Finally, the court dismissed plaintiff's Title V retaliation claim against CCJ for failure to state a claim. (Dkt. No. 4 at 12-13).

Plaintiff's surviving claims are his (1) Fourteenth Amendment claims against Nurse Heit related to the First/Fourteenth Amendment right of privacy; and (2) Title II ADA claims against Clinton County based upon exclusion from the work program. (Dkt. No. 4 at 14). Presently before the court is the defendants' motion for summary

judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 74). Plaintiff has responded in opposition to the motion.[2] (Dkt. No. 83). Plaintiff has also requested a two month extension "to respond" to defendants' motion. (Dkt. No. 86). Defendant have opposed this motion. (Dkt. No. 89). Plaintiff has also filed a copy of a letter that he wrote to defense counsel regarding his deposition transcript and further discovery. (Dkt. No. 87). For the following reasons, this court agrees with defendants, will deny plaintiff's request for a further extension, and will recommend dismissal of the complaint.

## II.  Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

---

[2] Plaintiff's response is labeled a cross-motion, but has been docketed as plaintiff's "response" in opposition to defendants' motion. To the extent that the document can be interpreted as a cross-motion for summary judgment, this court will recommend its denial based on the findings herein.

3

party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v.*

*Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103. Constitutional as well as claims under the ADA must be exhausted before filing suit in federal court. *See Crichlow v. Crowley*, No. 13-CV-6624, 2015 WL 1808626, at \*5 (W.D.N.Y. Apr. 21, 2015) (citing *Arce v. O'Connell*, 427 F. Supp. 2d 435, 440 (S.D.N.Y. 2006); *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010)).

Grievance programs and procedures in ***county*** facilities are contained in the regulations governing the New York State Commission of Correction, appearing in the chapter entitled "Minimum Standards and Regulations for Management of County Jails and Penitentiaries," in the part specifically entitled "Grievance Program." N.Y. CODE RULES & REGS. tit.9, §§7032.1-7032.11. These regulations specifically provide that the chief administrative officer of the correctional facility shall establish and maintain a formal inmate grievance procedure. *Id.* § 7032.1. The regulations provide that the facility shall maintain grievance forms for the inmates to use and shall make those forms readily available to inmates. *Id.* §§ 7032.4(d), 7032.6. The regulations also provide that instructions for filing a grievance shall be included in the facility rules and

5

regulations as required by section 7002.9(a)(15), and that "[e]ach inmate at any facility shall be advised in writing as to the availability of grievance forms upon admission." *Id.* § 7032.4(b), (c).

An inmate must file his grievance within five days of the date of the conduct giving rise to the complaint. *Id.* § 7032.4(d). The chief administrative officer of the facility designates a staff member to act as a grievance coordinator, and the regulations provide that each grievance shall be fully investigated by an individual who was not personally involved in the circumstances giving rise to the grievance. *Id.* § 7032.4(e), (f). The regulations specify minimum requirements for the type of information that must be gathered during the investigation of the inmate's grievance. *Id.* § 7032.4 (g)(1)-(g)(4).

The grievance coordinator must issue a written decision within five business days, containing the "facts and reasons underlying the coordinator's determination," and a copy of the determination must be provided to the inmate. *Id.* at 7032.4(i). The plaintiff may appeal an adverse determination to the chief administrative officer or his designee within two business days of receiving the adverse determination. *Id.* § 7032.4 (j). The chief administrative officer renders a decision within five business days, and if the inmate is still not satisfied, he may appeal the adverse decision directly to the Commission of Correction within three business days. *Id.* §§ 7032.4(k), 7032.5.

Within three business days after receiving the appeal from the inmate, the chief administrative officer of the facility must mail the appeal to the Commission's Citizens Policy and Complaint Review Council (CPCRC), and the grievance coordinator must

provide the inmate with a receipt of mailing. *Id.* § 7032.5(c). The CPCRC has forty-five days within which to issue a written decision. *Id.* § 7032.5(d). In certain circumstances, inmates will be provided assistance at any stage of the proceedings. *Id.* § 7032.9. The chief administrative officer of the facility must keep a centralized record of all grievances, and facility employees are given an orientation on the grievance procedures.[3] *Id.* §§ 7032.10, 7032.11.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the

---

[3] The regulations also provide that if an inmate is released or transferred to another facility prior to the resolution of a grievance, the chief administrative officer "shall cause a determination to be made on such grievance . . .", and if the grievance is denied, the chief administrative officer "shall submit the grievance to the [CPCRC] as set forth in section 7032.5 of this Part." 9 NYCRR § 7032.7.

other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 2016 WL 4572321 at *2. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

### B. Application

In this case, defendants concede that plaintiff brought a grievance regarding the issue of defendant Heit's alleged disclosure of private health information in violation of HIPAA. However, defendants argue that plaintiff did not wait for the CPCRC's decision before filed this federal civil rights complaint. This complaint was filed on June 16, 2016, but plaintiff's CPCRC denial was not dated until July 14, 2016. (Pl.'s Ex. A; Dkt. No. 83-1 at CM/ECF p.11). It is less clear that he included his ADA claim[4] in the grievance, but the court will assume for purposes of this motion that plaintiff brought his discrimination claim in his grievance.

To the extent a civil rights claims must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by highest level of decision-maker, must be completed ***before*** an action asserting that

---

[4] While plaintiff's privacy claim dealt with Nurse Heit revealing plaintiff's medical information to Officer Duprey, plaintiff's ADA claim against the County involved which individuals were allowed to work in certain areas of the facility. The claims are related, but not the same.

claim may be initially filed. *See, e.g., Grant v. Condon*, No. 14-CV-6514, 2018 WL 1256224, at *2 (W.D.N.Y. Mar. 12, 2018) (exhaustion must be completed before suit is filed); *Casey v. Brockley*, No. 9:13-CV-1271 (DNH/TWD), 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (Rep't-Rec.), *adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) ("receiving a decision from CORC after commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Guillory v. Haywood*, No. 9:13-CV-1564 (MAD/TWD), 2015 WL 268933, at *12 (N.D.N.Y. Jan. 21, 2015); *Rodriguez v. Rosner*, No. 12-CV-958 (TJM/ATB), 2012 WL 7160117, at *5 (N.D.N.Y. Dec. 5, 2012) (Rep't-Rec.), *adopted*, 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, at *11 (N.D.N.Y. Jan. 21, 2015) (citing, *inter alia*, *Neal v. Goord*, 267 F.3d at 122)).

In this case, it is clear that although plaintiff ultimately exhausted his administrative remedies with respect to his complaint against defendant Heit as well as his complaint against the County for discrimination, he did not complete the exhaustion process until ***after*** he filed this action.[5] Thus, plaintiff has failed to exhaust his

---

[5] In support of their motion for summary judgment, defendants have submitted the affidavit of Lieutenant Kevin Laurin, whose duties include overseeing the grievance program at CCJ. (Laurin Aff. ¶ 3) (Dkt. No. 74-8). Lt. Lauren states that plaintiff filed one grievance on May 25, 2016, regarding "his request to be in the inmate worker program and an issue with Nurse Heit regarding his medical

9

administrative remedies as to both of his claims, and this court must recommend dismissal of the entire complaint for failure to exhaust. Because a dismissal for failure to exhaust is generally without prejudice, the court has also considered the merits of plaintiff's claims. The court finds that, even if plaintiff had exhausted his claims, they would still be subject to dismissal as discussed below.

## IV. Privacy

### A. Legal Standards

The Second Circuit has recognized a constitutional right, protected by the First Amendment, to "'maintain the confidentiality of previously undisclosed medical information.'" *Mendez v. Quiros*, No. 3:16-CV-2097, 2017 WL 374462, at *3 (D. Conn. Jan. 25, 2017) (quoting *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999)). Prison officials may only "disclose medical information to the extent that disclosure relates to a 'legitimate penological interest.'" *Id.* "'The gratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy.'" *Id.*

The degree of protection afforded to an inmate's medical condition varies with the "sensitive" nature of the condition. *Id.* (citing *Powell*, 175 F.3d at 111). In order to

---

condition." (Lauren Aff. ¶ 5). Lt. Lauren states that, upon his review of the grievance, he determined that the only available positions at the time were in the kitchen, and plaintiff was not medically cleared to work in the kitchen. (*Id.* ¶ 6). Plaintiff appealed the denial of his grievance "all the way up to the CPCRC, which upheld the actions of the facility in their **July 14, 2016** decision." (*Id.* ¶ 7) (emphasis added). Lt. Lauren also states that, "while plaintiff submitted other grievances during his incarceration at the CCJ, at no point did he submit any other grievances directed at Nurse Heit or regarding his ability to work in the inmate worker program." (*Id.* ¶ 9).

10

state a claim for violation of the right to keep medical information confidential, the plaintiff must show that he suffers from an "unusual or sensitive medical condition that, if disclosed, would expose him to ridicule, discrimination or even violence, particularly when the word of the condition is likely to spread through 'humor or gossip[.]'" *Id.* (quoting *Powell*, 175 F.3d at 112; citing *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220 (W.D.N.Y. 2003) (dismissing case because plaintiff did not have an "unusual medical problem which, if disclosed unnecessarily to other inmates, would likely expose plaintiff to discrimination, intolerance, or potential violence"); *Webb v. Goldstein*, 117 F. Supp. 2d 289, 298-99 (E.D.N.Y. 2000) (dismissing a Fourteenth Amendment claim because the prisoner did not claim that he had the requisite medical condition)).

### B.     Application

Plaintiff claims that defendant Heit mentioned plaintiff's medical condition in front of the Corrections Officer ("C.O.") who escorted plaintiff to the infirmary on May 19, 2016, where plaintiff was scheduled to be evaluated for clearance as an inmate worker. The court will assume that plaintiff's HIV positive status rises to the level of a sufficiently "sensitive" condition. As stated by defendants, it is undisputed that inmates are escorted throughout the facility by C.O.s who remain with the inmates so that they may be transported back to their housing units. (Duprey Aff. ¶ 4). There are obvious security reasons for this procedure. (*Id.* ¶¶ 4-5). Plaintiff does not question that Officer Duprey was authorized and required to escort plaintiff to his medical appointment and required to stay in plaintiff's presence throughout the appointment.

Plaintiff alleges that defendant Heit told plaintiff, in the presence of Officer

11

Duprey, that plaintiff could not work in the kitchen because of his HIV status. Both defendant Heit and Officer Duprey state in their affidavits that the conversation did not occur as plaintiff claims. (*See generally* Duprey Aff., Heit Aff.) (Dkt. Nos. 74-5, 74-6). CO Duprey states that, on May 19, 2016, plaintiff was assessed by defendant Heit regarding plaintiff's ability to work in the "inmate worker program." (Duprey Aff. ¶ 7). CO Duprey states that he was the only other person in the room with plaintiff and Nurse Heit. (*Id.*) Nurse Heit told plaintiff that "people with his condition" typically did not get cleared to work in the kitchen, but he could be cleared to work "the floors and laundry." (*Id.*)

Officer Duprey states that plaintiff became agitated and informed Nurse Heit that he had sued another County Jail for discrimination and won. (Duprey Aff. ¶ 8). Defendant Heit told plaintiff that she would consult with her supervisor regarding any existing policies which would explain why plaintiff could not work in the kitchen "due to his condition." (*Id.* ¶ 9). However, Nurse Heit never stated what that "condition" was, other than referring to it as "'your condition.'" (*Id.*)

Defendant Heit states that she is a Registered Nurse ("RN"), who works for CCJ, and whose responsibilities include distributing medications to inmates, completing the "medical intake" for inmates at CCJ, addressing inmate health issues, responding to emergencies, responding to inmate "sick calls," distributing vaccinations, conducting inmate medical examinations, and "clearing inmates who seek to work in the inmate worker program." (Heit Aff. ¶ 4). Defendant Heit states that, for security purposes, when inmates seek medical attention and when they are being evaluated, it is CCJ

policy to have a CO accompany the inmate. (*Id.* ¶ 5). The CO who accompanies the inmate to the examination will "take a position near the open doorway of the exam room." (*Id.* ¶ 6). The CO does not necessarily stand next to the inmate during the medical interaction, but keeps the inmate in the CO's field of vision so that the officer may "immediately respond to any behavioral or verbal incident." (*Id.*)

After reviewing the relevant records, defendant Heit states that she remembers seeing plaintiff on May 19, 2016, regarding his request to be cleared as an inmate worker. CO Duprey accompanied plaintiff to the examination. (Heit Aff. ¶ 7). Defendant Heit states that during the examination she told plaintiff that he could not work in the kitchen due to his "condition," but did not disclose the condition itself. (*Id.* ¶ 8). Defendant Heit states that plaintiff became angry and wanted to see something in writing as to why he could not work in the kitchen area. (*Id.* ¶ 9). Defendant Heit states that she informed plaintiff that she would ask her supervisor - Nurse Kinter, who issued a memorandum stating that plaintiff could work in any area of the facility "except for the kitchen pursuant to minimum standards section 7009.5(b)." (*Id.*)

Defendant Heit also states that when she evaluates inmates to determine whether they can work in the inmate worker program, she can only give her recommendation. She has no control or authority over which inmates get placed in any particular job. (*Id.* ¶ 10). Defendant Heit states that she has never spoken to any other medical officials or Corrections Officers about plaintiff's condition "outside of the requirements of my job as RN." (*Id.* ¶ 11). Defendant Heit also does not speak to other inmates about her patients' medical conditions. (*Id.* ¶ 12).

13

Defendants have also filed excerpts from the plaintiff's deposition in this case. (Def.s' Ex. C) (Pl.'s Dep.) (Dkt. No. 74-4). Plaintiff testified that prior to the encounter with defendant Heit, he had spoken with other inmates at CCJ about his HIV status. (Pl.'s Dep. at 43-44).[6] Plaintiff also discussed his HIV status with officers at the facility. (Pl.'s Dep. at 44, 45). Plaintiff stated that no one else except defendant Heit and CO Duprey was in the room when plaintiff went for his inmate worker evaluation. (*Id.* at 65). Plaintiff conceded that he was also aware that CO Duprey already knew about plaintiff's condition prior to the evaluation. (*Id.* at 65-66). Plaintiff stated that he spoke to CO Duprey "years ago" about his "health issues." (*Id.* at 65). Plaintiff stated that CO Duprey had also done plaintiff's "intake" at the jail, so he would have to know about his health information. (*Id.* at 66).

Thus, it is clear from plaintiff's own statements that his medical condition was not "previously undisclosed" to CO Duprey. Officer Duprey's presence and defendant Heit's statements[7] were not in violation of plaintiff's First Amendment privacy rights. In addition, CO Duprey's presence in the examination room was reasonably related to the valid security concern of protecting the Nurses' safety during an inmate's examination.[8] Thus, Nurse Heit did not violate plaintiff's First Amendment right to

---

[6] Defendants have only filed excerpts of the plaintiff's deposition. The pages are not sequentially numbered, so the court will cite to the page of the deposition that appears at the top right corner of the page, not to the CM/ECF numbered page.

[7] This is true even if defendant Heit did mention HIV, which she claims, and CO Duprey confirms is not the case.

[8] A regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (citing Turner v. Safely, 482 U.S. 78, 89 (1987).

privacy during the May 19, 2016 examination.

## V. ADA Claim

### A. Legal Standards

The ADA is applicable to inmates in state correctional facilities. *See Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005) (both the ADA and the Rehabilitation Act are applicable to inmates). Under the ADA, the inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005).

In order to establish a claim under the ADA, the plaintiff must first show that he has a disability. *Farid v. Bouey*, 554 F. Supp. 2d 301, 326 (N.D.N.Y. 2008). Under the Title II of the ADA, a disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities. *Id.* (citing *inter alia Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002); *Doe v. Goord*, No. 04-CV-570, 2004 WL 2829876 at *17, 2004 U.S. Dist. LEXIS 24808 (S.D.N.Y. Dec. 10, 2004); 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B)). Plaintiff must identify the activity that he claims is impaired and establish that it constitutes a "major life activity." *Weixel*, 287 F.3d at 147.

Major life activities include, among others, caring for oneself; performing

manual tasks; seeing, hearing; speaking; breathing; learning; reading; communicating; and working. 42 U.S.C. § 12101(2)(A). Major life activities also include the operation of a major bodily function such as the immune system; digestive system; neurological system; respiratory; bladder; brain; endocrine; reproductive and circulatory systems. *Id.* § 12101(2)(B). A substantial limitation is one that prevents or severely restricts the individual from doing activities that are of "central importance most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).

**B.     Application**

It has been held that HIV infection qualifies as a disability under the ADA. *Doe v. Deer Mountain Day Camp*, 682 F. Supp. 2d 324, 341 (S.D.N.Y. 2010) (citing inter alia *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998). There is also no dispute the CCJ is a public entity. However, plaintiff cannot meet the third requirement for establishing an ADA violation. Plaintiff was not excluded from participation in, nor was he denied the benefits of some service, program or activity by reason of his or her disability. The "program" of which plaintiff complains is the "inmate worker program." Plaintiff was eligible to participate in the program and work in many other jobs throughout the facility. On May 20, 2016, he was cleared to "work in any other part of the correctional facility at this time." (Def.s' Ex. A at 11) (Dkt. No. 74-2). Kitchen workers are required to be free of "communicable diseases." (*Id.* & Pl.'s Ex. A at 15 (Dkt. No. 83-1 at 15).[9] HIV was only one of the conditions listed that would have

---

[9] 9 N.Y.C.R.R. § 7417.6(b) (regulations regarding food service personnel).

prevented plaintiff from being assigned to work in the kitchen.[10]  During his deposition, plaintiff testified that he worked in the inmate worker program at CCJ "a lot of times . . . 11, 12 times." (Def.'s Ex. C at 33).  In fact, plaintiff testified that he was aware of the kitchen restriction and did not even "apply for that job."[11] (*Id.* at 26, 35, 62).  Thus, plaintiff was not denied any benefit of the inmate worker program "due to his disability," and his complaint may be dismissed in its entirety.

## VI.   Request for Extension of Time and Discovery Request

### A.   Extension Request

Plaintiff has filed a letter-motion requesting an two-month extension of time to "respond" to the defendants' motion.  Defense counsel has opposed the motion.  Plaintiff has already responded in opposition to the motion. (Dkt. No. 83).  In the present letter-request, plaintiff asks for a two-month extension because he states that "new evidence" from the World Health Organization ("WHO") was delivered to him "about a month ago," which is "important to [his] motion." (Dkt. No. 86).

Plaintiff does not explain what this new information is or why it is important to his "motion," and this court finds that an extension of time to allow plaintiff to make

---

[10] Other communicable diseases listed include chickenpox, Lyme Disease, Shingles, HIV/AIDS, Hepatitis, Meningitis, Strep, Syphilis, Influenza, Staph, Tuberculosis, and "All Other STD's." (Pl.s' Ex. B at CM/ECF p.25).

[11] Oddly, in plaintiff's response to the defendants' motion, he now states that he was told by a sergeant that he was "wanted" as a kitchen worker, and that he got his "hopes up," but that he was "stopped right in [his] tracks" during the medical clearance. (Dkt. No. 83 at 4).  This statement is completely contradicted by plaintiff's deposition testimony, during which he says he knew he was not allowed to work in the kitchen, and he was not even applying for that job. (Pl.'s Dep. at 26, 35, 62).  At one point plaintiff stated "never once I said I would like to work in a kitchen because I know my health status." (Pl.'s Dep. at 26).

17

further submissions at this time is not appropriate. The primary basis for this recommendation of dismissal is plaintiff's failure to exhaust his administrative remedies before this action was filed. Plaintiff's information from the WHO would not have any impact on his failure to exhaust.

Even with respect to the merits of plaintiff's claim, the information from the WHO would likely not be pertinent. Although it is unclear what plaintiff intends to argue, this court has assumed that HIV is a disability for purposes of the ADA. Thus, support for such a claim is unnecessary. In addition, plaintiff has already submitted information from the Centers for Disease Control ("CDC") indicating that one cannot contract HIV from consuming food handled by an HIV-infected person. (Dkt. No. 83-1 at 19). Presumably, plaintiff would argue that there should be no prohibition based on HIV from plaintiff working in the kitchen. Once again, even assuming that this statement is true, at his deposition, plaintiff stated that he was not applying for a kitchen job.[12]

In addition, plaintiff was not prevented from participating in the inmate work program "due to his disability." At worst, he was ineligible to work in the kitchen according to state regulations which prevent anyone with ***any*** communicable disease from working in the kitchen. As he admitted during his deposition, he participated in many other jobs in the inmate worker program. Thus, whether plaintiff could or could not work safely in the kitchen is not at issue in this case. In any event, if plaintiff

---

[12] The court assumes that plaintiff made this statement to support his claim that defendant Heit spontaneously and maliciously stated that plaintiff could not work in the kitchen due to his HIV status - even though he had not applied for the position. Plaintiff cannot have it both ways.

believes that his new evidence should change the outcome of the court's decision, he may include the evidence in his objections to this recommendation.

### B.   Discovery

The court will strike plaintiff's letter as it relates to discovery, first because the deadline for completion of discovery has passed,[13] and second, even if the deadline had not passed, requests for discovery are not filed with the court in the first instance.[14]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's request for an extension of time to respond to the defendants' motion for summary judgment (Dkt. No. 86) is **DENIED**, and it is

**ORDERED**, that plaintiff's letter to defense counsel regarding discovery (Dkt. No. 87) is **STRICKEN FROM THE RECORD**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 74) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**, and it is

**RECOMMENDED**, that to the extent that plaintiff's response to the defendants'

---

[13] As defendants point out in their opposition letter, the deadline for discovery expired on October 29, 2017, and plaintiff has never asked the court for an extension of time for further discovery. Defendants also claim that, contrary to plaintiff's allegation in his letter, defense counsel did send plaintiff a complete transcript of his deposition, The court does note that counsel only filed excerpts of plaintiff's deposition in support of the summary judgment motion. A party is not required to file a complete transcript of the deposition in support of a motion if the rest of the testimony is not relevant to the arguments in the motion. *See* Fed. R. Civ. P. 56(c)(1)(A) (party may cite to particular "parts" of materials in the record, including depositions). If plaintiff believed that other portions of the deposition were relevant, he was free to file them in support of his response in opposition. Finally, the court notes that plaintiff continues to claim that his English is not good. However, as I stated in my order denying counsel, plaintiff's intake form indicates that he was born in the United States and is a high school graduate. In addition, a review of the excerpts of the deposition transcript filed by defendant does not indicate that plaintiff had difficulty understanding or speaking English.

[14] The letter is not addressed to the court.

motion (Dkt. No. 83) can be considered a cross-motion, it be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 30, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge